**NOT FOR PUBLICATION**

                        UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF NEW JERSEY


Anne Sanzo,                       :
                                          Civ. No. 04-300 (WGB)
        Plaintiff                 :       MEMORANDUM OPINION

v.                                :

NYSA-ILA PENSION TRUST FUND       :

        Defendant                 :

**APPEARANCES:**

William J. Finnerty, Esq.
Hughes & Finnerty, P.D.
25 W. 8th Street
P.O. Box 65
Bayonne, New Jersey 07002

     Counsel for Plaintiff

James R. Campbell, Esq.
Lambos & Junge
Pamrapo Financial Center
595Avenue C
Bayonne, New Jersey 07002

     Counsel for Defendants

John P. Sheridan, Esq.
Gleason & Mathews, P.C.
26 Broadway - 17th Floor
New York, New York 10004

     Counsel for Defendants

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiff, Anne Sanzo, seeks to recover pension benefits from the NYSA-ILA Pension Trust Fund ("PTF"), (An ERISA plan) following the death of her ex-husband. PTF denied Plaintiff's application for benefits on the grounds that an Amended Domestic Relations Order ("ADRO") entered in the Superior Court of New Jersey, Hudson County, Chancery Division, Family Part is not a Qualified Domestic Relations Order ("QDRO") entitling Plaintiff to survivorship benefits because it was received after the death of Plaintiff's ex-husband. Plaintiff filed this action in the Superior Court of New Jersey, Hudson County, and PTF removed the case to this Court. Plaintiff and PTF now submit cross-motions for summary judgment.

**I.  ISSUE**

Whether the ADRO entered in the Superior Court of New Jersey constitutes a QDRO under the Employee Retirement Income Security Act (ERISA).

**II.  FACTUAL BACKGROUND**

Defendant PTF is a joint labor-management trust fund and is a multiemployer employee benefit pension plan within the meaning of ERISA. Certification ("Cert.") of Charles Ward, at ¶ 2. Plaintiff was married to Dominick Sanzo from June 7, 1980 until September 22, 1997 when they divorced. Id. at ¶ 5; see also Ex. 1. The judgment of divorce filed on November 12, 1997 stated that Plaintiff would receive $232.56 per month "by way of a

Qualified Domestic Relations Order." Id. at ¶ 5, Ex. 1, at 2.  A QDRO-the original domestic relations order-was filed in Superior Court on November 20, 1997 providing that Plaintiff would receive "the sum of $232.48 per month from the monthly pension benefits due Dominick Sanzo (the participant), commencing when Dominick Sanzo (the participant) **begins receiving his monthly pension benefits**." Id. at ¶ 6, Ex. 2 at 2 (emphasis in original).

Mr. Sanzo worked for 43 years in the longshore industry in the Port and had a vested right under the defined benefit plan to receive monthly pension benefits from PTF in the amount of $2,000.  Id. at ¶ 3.  Although Mr. Sanzo was eligible to retire in August 1993, he continued to work in the industry and never filed an application for pension benefits with PTF.  Id. at ¶ 4. Mr. Sanzo died on December 6, 1997, without ever having received or applied for his pension benefits from PTF.  Id.

After Mr. Sanzo's death, Plaintiff sent PTF a letter on December 30, 1997 inquiring as to why she was not receiving pension benefits.  Id. at ¶ 7, Ex. 3.  PTF sent a response letter explaining that because Mr. Sanzo died before he began receiving his monthly pension benefits, Plaintiff was not entitled to receive any benefits.  Id. at ¶ 7, Ex. 4.  By letter dated July 6, 1998, Plaintiff submitted a copy of the ADRO, entered by the Superior Court of New Jersey, Hudson County on July 1, 1998, which ordered that Plaintiff is to be deemed the "alternate

3

payee" and, as such, is to be treated as the "surviving spouse" of Mr. Sanzo for purposes of ERISA. Id. at ¶ 8, Ex. 5. The ADRO also directed the PTF to pay Plaintiff "a monthly sum equal to fifty (50%) per cent of the monthly pension benefits that the participant would have been entitled to receive in accordance with the Plan provision for 'Benefits Upon the Death of a Participant Before Benefit Commencement Date' from the Plan."[1]

This Court has jurisdiction over this case pursuant to ERISA § 502, 29 U.S.C. § 1132. The Board of Trustees determined that the ADRO was invalid because it was entered after the participant's death, citing Ross v. Ross, 308 N.J. 132 (App. Div. 1998)

**IV.   DETERMINATION OF PLAINTIFF ENTITLEMENT TO BENEFITS**

   **A.   QDRO Requirements**

Prior to 1984, ERISA prohibited the alienation or assignment of pension benefits. Samaroo v. Samaroo, 743 F.Supp. 309, 312 (D.N.J. 1990). After ERISA was enacted, however, courts were divided on whether the complete restriction on alienation of pension plans preempted state domestic relations laws, which permitted the assignment of plan benefits for the purpose of

---

[1] Plaintiff stipulates to PTF's Statement of Facts set forth in its Memorandum of Law, with one exception. According to Plaintiff, Plaintiff's ex-husband represented to Plaintiff that he had applied for retirement benefits from the PTF's pension plan. Pl. Mem. at 2. Plaintiff provides no evidence to support this claim.

4

dividing marital property.  Ross v. Ross, 308 N.J. Super. 132 (App. Div. 1998).  Congress responded by enacting the Retirement Equity Act ("REA"), which created a limited exception to the ERISA preemption by allowing pension plan benefits to be divided pursuant to state law where a QDRO exists.  Samaroo, 743 F.Supp at 312.

A QDRO must "create or recognize the existence of an alternate payee's right to, or assign to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under the plan.  29 U.S.C.A. § 1056(d)(3)(B).  To be a valid QDRO, a Domestic relations order must satisfy the requirements of § 1056(d)(3)(c) and (D) of ERISA.  The first section outlines the information which a Domestic relations order must contain:

> (I)  the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered under the plan,
>
> (ii)  the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii)  the number of payments or period to which such order applies, and
>
> (iv)  each plan to which the order applies.

29 U.S.C.A. § 1056(d)(3)(c).  The second subsection limits the ability of a participant to assign or alienate benefits.  A Domestic relations order meets the requirements of this section

if it:

    (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

    (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

    (iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(D).

PTF does not contest that the original domestic relations order meets the ERISA requirements. PTF's Memorandum of Law ("PTF Mem.") at 6. Additionally, PTF does not dispute that the ADRO satisfies the informational requirements. It does argue, however, that the ADRO is not a valid QDRO because it requires the plan to provide increased benefits and was entered into after the death of Plaintiff's ex-husband. PTF Reply Memorandum of Law ("PTF Reply Mem.") at 2. Plaintiff's position is less clear. Plaintiff appears to argue that since the original domestic relations order was a valid QDRO, the ADRO, which purportedly serves only to amend the original domestic relations order by making Plaintiff the surviving spouse, is a valid QDRO. Plaintiff's reasoning fails.

    **B.   ADRO Fails to Satisfy QDRO Requirements**

This case presents a unique fact pattern addressing the complex intricacies between state domestic relations law and the

responsibilities of a pension benefit fund outlined in ERISA. Unlike most of the cases cited by PTF and Plaintiff, a valid QDRO was established prior to the death of Plaintiff's ex-husband. That QDRO-the original domestic relations order-provided that Plaintiff would receive $232.48 of her ex-husband's monthly pension benefits when he "**begins receiving**" his benefits.  Cert. of Charles Ward at ¶ 6, Ex. 2 at 2 (emphasis in original). Plaintiff was, therefore, entitled to receive $232.48 at the time that her ex-husband starting receiving his benefits.

Having accepted all of PTF's statement of facts (with the exception of one excluded fact), Plaintiff concedes that "Mr. Sanzo died without ever having received or applied for pension benefits from PTF."  PTF Mem. at 2.[2]  Plaintiff further agrees that pursuant to PTF's Plan, a participant must file an application and have it approved by PTF's Board of Trustees before being eligible to receive benefits.  Id. at n.1.  Since Plaintiff's ex-husband died before ever applying for benefits and because the original domestic relations order provided that Plaintiff would not receive any money until Plaintiff's ex-husband began receiving benefits, Plaintiff's right to pension benefits never existed.

---

[2]Although Plaintiff claims that her husband represented that he applied for benefits, Plaintiff provides no evidence of this fact.  Even if she had, "[w]hether a domestic relations order qualifies as a QDRO depends on the language of the order itself; the subjective intentions of the parties are not controlling." Smith v. Smith, 248 F. Supp. 2d 348 (D.N.J. 2003)

The Third Circuit in <u>Files v. Exxon Mobile Pension Plan</u>, sustained a *nunc pro tunc* order. The Court held that the ex-wife of a deceased pension plan participant had pre-existing rights to plan benefits where the PSA stated that the "wife shall be entitled to one-half of the Exxon pension . . .". That provision, the Court stated, created a separate interest in the pension for the ex-wife. 428 F.3d 478, 480 (3d Cir. 2005). The Court ruled that the ex-wife could have enforced her right to receive benefits prior to the death of her ex-husband, who had fully vested and was past the eligibility age of fifty prior to his death. <u>Id.</u> at 488. In addition, the Court reasoned that the *nunc pro tunc* order entered after the ex-husband's death merely qualified the PSA as a QDRO by satisfying the requirements of ERISA. <u>Id.</u> at 486, n.11.

Unlike the <u>Files</u> plaintiff, Sanzo seeks to collect pension benefits to which she never had a right, arguing that the ADRO entered subsequent to her ex-husband's death created such a right. Plaintiff compares her situation to the plaintiff's in <u>Smith v. Smith</u>, 248 F. Supp. 2d 348 (D.N.J. 2003).

In <u>Smith</u>, the plaintiff sued to recover pension benefits she claimed were due under a PSA, which authorized the pension to pay her "50% of the Husband's pension entitlement . . . at the time Husband begins to receive the said pension." <u>Id.</u> at 351. Although the ex-husband died before he began receiving his

8

pension, the PSA, signed prior to his death, explicitly provided that "[i]f, a death benefit is paid in lieu of the pension then a minimum of 50% of that death benefit shall be paid to wife." The Court held that because the Dupont Pension and Retirement Plan provided for a "spousal benefit" granting employees, who had not reached the qualifying age for retirement, but who had at least five years of service, a nonforfeitable right to a deferred pension, plaintiff was entitled to a spousal benefit.  Id. at 356.

Here, neither the judgment of divorce nor the original domestic relations order provided for any death or survivor benefits recognized under PTF's pension plan.[3]  The ADRO entered after the death of the Plaintiff's ex-husband attempted to provide survivor benefits, but it could not create a right that didn't exist prior to the ex-husband's death.

This case is factually closer to the Third Circuit's decision in Samaroo v. Samaroo, 193 F.3d 185 (3d Cir. 1999). In Samaroo, the AT&T Management Pension Plan sought a declaration that the ex-wife was not entitled to the pre-retirement benefits of her ex-husband, who had died while still actively employed by AT&T.  Id.  As here the divorce decree was silent as to the pre-retirement survivor's annuity.  The decree stated that

---

[3]PTF's Plan provides for two death benefits, a preretirement survivor annuity and a joint and survivor annuity.

> Husband has a vested pension having a present value, if husband were to retire at this time, of $1,358.59 per month. At the time of husband's retirement and receipt of his pension he agrees to pay to wife one half of said monthly amount.

Id. at 187. Since the ex-husband died before reaching the qualifying age for pension benefits, the Court held that the pension benefit granted to ex-wives and expressly provided for in the divorce decree never came to fruition. Likewise, Sanzo's potential pension benefit never came to fruition because her ex-husband never applied for benefits, a necessary prerequisite for him to begin receiving them.[4]

After being denied benefits, the Samaroo plaintiff sought a *nunc pro tunc* amendment to the divorce decree to create a "right of survivorship to 50% of her ex-husband's vested pension benefits." Id. At 186. The Third Circuit refused to enforce the amended divorce decree finding that it was not a QDRO because it would have violated the impermissible increase in plan benefits in violation of ERISA, 29 U.S.C. 1056(d)(3)(D). The Court further stated that enforcing the amended divorce decree would "wreak actuarial havoc on administration of the Plan." The Court reasoned that:

> successful operation of a defined benefit plan requires that the plan's liability be ascertainable as of

---

[4] Although Plaintiff's ex-husband had reached the age to make him eligible for retirement benefits, PTF noted and Plaintiff concedes, that it was necessary for him to apply and be approved by PTF's board of trustees before he would be eligible to receive benefits. PTF Mem. at n.1; Plaintiff's Memorandum ("Pl. Mem.") at 2.

10

> particular dates.  The annuity provisions of a defined
> benefit plan are a sort of insurance, based on
> actuarial calculations predicting the future demands on
> the plan.  Some annuity participants will die without
> ever receiving a payment and some participants will
> receive payments far in excess of the value of their
> contributions.  The fact that some participants die
> without a surviving spouse to qualify for benefits is
> not an unfair forfeiture. . . .

Id. at 190.  The ADRO obtained by Plaintiff cannot give her a right to survivor benefits that didn't exist as of the date of her ex-husband's death.  Like the *nunc pro tunc* order in Samaroo, the ADRO increases the PTF liability by requiring it to pay benefits that have already lapsed and by making the PTF pay Sanzo a sum larger than she was entitled to under the original domestic relations order.  See Pl. Mem. at 5 (ADRO granted Sanzo "a monthly sum equal to fifty (50%) per cent" of her ex-husband's monthly benefits instead of the $232.48 per month provided under the original domestic relations order).  In other words the ADRO cannot give Sanzo what the judgment of divorce does not give her namely, survivorship benefits. Because the ADRO violates the ERISA requirements under section 29 U.S.C. 1056(d)(3)(D), the Court agrees with PTF and finds that the ADRO is not a QDRO.

## V. Conclusion

The summary judgment motion of PTF is granted.  Judgment is entered for NYSA-ILA Pension Trust Fund. The cross-motion of Plaintiff is consequently denied.

An appropriate Order follows.


Dated: December 28, 2005


---

                                        /S/ WILLIAM G. BASSLER
                                        William G. Bassler, U.S.S.D.J.